Rtnmu, C. J.
 

 On the 10th of August, 1813, John Knighton executed to the plaintiff a mortgage in fee for a tract of land, containing 230 acres, expressed to be for the security of a debt of $ 100, payable on the 15th of September following. Knighton- died in 1830, leaving no child, but a widow, and several brothers and sisters, who were his heirs and next of kin. James Gudger administered on his personal estate; and, in 1836, at the instance of the brothers and sisters, the land was sold under a decree of the Court of Equity, for the purpose of partition; and was bought by Robert P. Wells, at the price of $415, which he afterwards paid into Court. In 1838, the plaintiff had his mortgage proved by the evidence of the hand-writing of Knighton, and the subscribing witness, (who was also dead,) and registered: and, in March, 1842, he filed this bill against Wells, the administrator of Knighton, and against Welch and his other heirs, praying for payment of the principal of the debt, and interest from September 15th, 1813, by the administrator, or out of the produce of the sale of the land then in Court, or else for the foreclosure of the mortgage.
 

 Most of Knighton’s heirs are non-residents, and the bill was taken
 
 pro confesso
 
 against them. But one of them» Mr. Welch, and Gudger and Wells put in answers. They state that they had no knowledge of the alleged mortgage, nor ever heard of it, until the plaintiff had it proved and registered in 1838 ; that they do not believe that Knighton owed the plaintiff any debt at that time ; but if he did, that they believe it had been paid by him many years before his death: That, at the time the deed purports to have been made, the plaintiff had but little property, and Knighton was possessed of several slaves and other property, besides the
 
 *289
 
 land: that Knighton resided on this tract of land until his death, and then left a clear personal estate exceeding $>1000? which was distributed soon after his death among his next of kin: and that, during all that time, the plaintiff liv'ed in the same neighborhood, in straitened circumstances, and was also present at the sale of the land under the decree, and yet did not produce the pretended mortgage, nor set up any claim under it. The defendants then insist, that, under such circumstances, and after so long a time had elapsed before the filing of the bill, and without the plaintiff’s having entered into possession of the premises, or demanded the debt, or received anything on it, the Court ought to presume payment of the debt and satisfaction of the mortgage.
 

 The proofs induce not a slight suspicion, from circumstances existing at the date of the deed, that the mortgage debt had no real existence ; but that the incumbrance was fabricated as an obstacle to others expected to claim as ere. ditors, and was never intended to be set up by the plaintiff. There is also evidence of the circumstances alleged in the answers, from which it might be infen-ed, supposing the debt to have been a true one in its creation, that it had been actually paid by Knighton. But it is deemed unnecessary to consider the particular proofs to those points, because, upon the pleadings, the Court considers the plaintiff barred by a legal presumption of payment.
 

 The bill is to be considered as one purely for foreclosure. It is true, the plaintiff submits, instead of taking the land, to accept payment from the administrator, or out of the money got for the land by the heirs. But that is really saying nothing more than that he will not interfere with the equities of the defendants, as between themselves. The plaintiff has no right to come into this Court to recover his debt merely; for that is a legal demand. His redress is against the land, and he is to have that, unless his debt has
 
 *290
 
 been already satisfied, or shall now be satisfied by the person claiming the land, or some one else at his instance. There is, therefore, no direct or independent equity in the plaintiff against -the fund in Court: but, at most, he could only have satisfaction decreed out of it by showing a right in hiprself to have a decree of foreclosure in respect of the land itself. Whether a bill for foreclosure would lie where the mortgagee had not been in actual possession, nor received nor demanded interest for twenty years, is a point on which there-has been much contrariety of opinion and adjudication in England. Those who were for sustaining such bills admitted, that a debt is generally presumed to be satisfied after twenty years-] but they held that a mortgage was not affected thereby, because the mortgagor was tenant at will to the mortgagee, and so there was no adverse pessession, and the mortgagee .could recover in ejectment at any time. lienee,it was said that, if the bond or other collateral security were presumed do be satisfied, the mortgage yet remained, and the Court of Equity could not deny the party the benefit of it.
 

 On the other hand, it was considered, that the two securities of bonds and mortgages stood on the same footing, -in respect to the .presumption from non-payment of interest for twenty years; and that -the mortgage could not be upheld .in equity, when the debt appeared to be satisfied, either upon express proof of payment, or on the presumption of payment. Those Judges regarded the reasoning as fallacious, which was founded on the .notion that the mortgagor was tenant at will of the mortgagee: for, although he has sometimes been so called, it is obviously-only
 
 sub'
 
 modo, and by way of illustration for certain .purposes, since there is no demise, express or implied, and no actual tenancy ; but the mortgagor may at any time be turned out without notice. It was thought, therefore, and with apparent reason, that the fiction of the .supposed relation of land
 
 *291
 
 lord and tenant at law ought not to affect in equity that peculiar relation there existing between mortgagor and mortgagee, whereby they are looked upon as debtor and creditor, and the former as the owner of the estate, and the latter as having merely a security on it for whatever sum may be due to him. The heirs of a mortgagor in fee may, for instance, call tor a conveyance from the heirs of the mortgagee upon payment of the debt to the executor, and may require the executor of the mortgagor to make the payment: showing that, in truth, a mortgage is, in the view of a Court of Equity, but a collateral security, and the whole benefit of it sinks with the extinguishment of the debt — at least, unless by the laches of the mortgagor, he shows that he has abandoned his equity to a re-conveyance. As the mortgagor is shut out of redemption by the mortgagee’s possession for twenty years, it was thought reasonable and convenient that the bar should be recipi’ocal on the mortgagee, who did not act on his debt or mortgage, until the debt was presumed to be satisfied by the lapse of twenty years. It is a point lor curious and interesting investigation, to trace the adjudications of different periods on this question, at law and in equity; and the attention of those who may have a fancy for it may be directed to the following as some of the cases from which the learning may be gathered.
 
 Leman
 
 v.
 
 Newnham,
 
 1 Ves. S. 51.
 
 Toplis
 
 v.
 
 Baker,
 
 2 Cox Ch. C. 118.
 
 Meade
 
 v.
 
 Bandon,
 
 2 Dow P. C. 268.
 
 Hall
 
 v.
 
 Doe,
 
 5 Barn, and Ald. 687,
 
 Wilson
 
 v.
 
 Witherly,
 
 Bul. N. P. 110.
 
 Martin
 
 v. Mowlin. Barn. 978.
 
 Richards
 
 v.
 
 Syms,
 
 Barn. Rep. 90.
 
 Trash
 
 v.
 
 White,
 
 3 Bro. C. C. 289.
 
 Blewitt
 
 v.
 
 Thomas, 2
 
 Ves. jr. 660.
 
 Hillary
 
 v.
 
 Walker,
 
 12 Ves. 239, 266.
 
 Doe
 
 v.
 
 Calvert,
 
 5 Taunt. 170.
 
 Christophers
 
 v.
 
 Sparke, 2
 
 Jac. and Walk. 223.
 
 Cooke
 
 v.
 
 Saltan, 2
 
 Sim. and Ste. 154; and
 
 White
 
 v.
 
 Panther,
 
 1 Knapp’s cases, 328. In that coun
 
 *292
 
 try, however, the point is one of cariosity only ; for the correctness of the latter course of reasoning received a full parliamentary sanction in the recent acts of 3 and 4 W. 4, oil. 27, and 1 Yic. ch. 28, which require mortgagees to enter or sue within twenty years next after the last payment of any part of the principal or interest secured by the mortgage.
 

 In this country, there was less difficulty in disposing of the point so much controverted in the English Courts; the Judges here, not being fettered by the adjudications títere, as authorities, and at liberty to regard the better reason pf the opposing opinions, without the .aid of a statute, and
 
 una vocy,
 
 we believe, treated the presumption of a release or abandonment of the equity of redemption on one hand, and of payment of the mortgage debt on the other, and the consequent satisfaction of the mortgage, as arising from a delay of twenty years without some payment, or acknowledgment between the parties. The first American case found, is that of
 
 Morgan v. Davis,
 
 in 1781, 2 Har. and McHen. Rep. 9. There have been many since: and among them are
 
 Higginson
 
 v.
 
 Mein,
 
 4 Cranch. 415:
 
 Collins
 
 v.
 
 Terry,
 
 7 John. R. 278;
 
 Jackson
 
 v.
 
 Wood, 12
 
 John. R. 242;
 
 Giles v. Basemore, 5
 
 John. C. C. 545. In the latter case, Chancellor Kent held the broad principle, that the presumption of payment of a mortgage debt from lapse of time was allowed and made in the Court oí Equity, as at law : and that where there had been thirty* five years before suit, without interest paid or demanded, the mortgage was presumed to be satisfied, and the bill for foreclosure dismissed. And he deemed it sufficient to enable the defendant to avail himself of that presumption, that he stated in his answer his ignorance of the debt, and insisted that he had a complete title, by a purchase at sheriff’s sale, and a long quiet possession. In
 
 Hughes
 
 v.
 
 Edwards,
 
 9
 
 *293
 
 Wheat. 489, the Supreme Court of the United States said, that, in respect to a mortgagee seeking to foreclose, the general rule is, when the mortgagor retained possession, the “mortgage will, after a length of time, be presumed to be discharged, by the payment of the debt, or a release, unless circumstances be shown to repel it, as payment of interest, or some acknowledgment of the mortgagor, that the mortgage is subsisting.
 

 There can be no doubt, then, that, according to the settled course of decision in this country, and the reasons on which it proceeds, which are apparently so sound as lately to have influenced the legislation both in England and our own country, the debt and mortgage, under consideration, are to be presumed to have been satisfied, as there was a lapse of twenty-eight and a half years from the day of payment, before suit brought, and during that long interval, the supposed mortgagor was in possession, and neither the debt nor mortgage was asserted by the alleged creditor, nor recognised by the other party, as subsisting, and the bill offers no explanation of the delay. But the case does not even depend on a presumption from so great a length oí time: for, the act of 1826, in shortening the period, from which the presumption of the payment of certain debts should thereafter arise, expressly provided, in the second section, for presumptions, both against the mortgagee and mortgagor, in respect to mortgages, by enacting against the former, that “ the presumption of payment,” and against the latter, that “ the presumption of abandonment of the rights of redemption,” on mortgages before made, should arise within thirteen years after the forfeiture of the mortgage, or last payment on it. Upon that enactment, it is only necessary to say, that, according to the case o
 
 f Giles v. Basemore,
 
 the fact of payment is sufficiently averred, and the presumption insisted on in the answer;
 
 *294
 
 and it is clear, that the bill should thereupon be dismissed, with costs to such of the defendants as answered.
 
 Anders
 
 v.
 
 Lee,
 
 1 Dev. and Bat. Eq. 318.
 

 Per Curiam. Decree accordingly.